NOs. 13-17449 and 13-17561

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

CATHY RILEY,
Defendant/Counter-Claimant and Appellant

v.

DAVISON DESIGN & DEVELOPMENT INC.,
XL MARKETING CORPORATION, *et al*,
Plaintiffs/Counter-Defendants and Appellees

On Appeal from the United States District Court for the
Northern District of California, No. 4:11-CV-02970-PJH
Honorable Phyllis Hamilton

## APPELLANT'S REPLY BRIEF

Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive #207
Aptos, CA 95003
Phone (831) 685-9800, Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Phone: (415) 869-2873, Fax: (415) 869-2873

*Attorneys for Defendant/Counter-Claimant and
Appellant Cathy Riley*

# I.  TABLE OF CONTENTS

**Page**

I.    **TABLE OF CONTENTS** ................................................................i

II.    **TABLE OF AUTHORITIES** .................................................... ii

III.   **INTRODUCTION** ...................................................................1

IV.   **ARGUMENT**.............................................................................3

    A. The CAN-SPAM Act Does Not Preempt California's Anti-Spam Law, Section 17529.5 ..................................................... 3

    B. The CAN-SPAM Act's Exception to Preemption Provision Does Not Apply to Common Law Claims ................................4

    C. Congress Expressly Authorized the States to Regulate False and Deceptive Spams ..................................................6

    D. Respondents Misrepresent the Applicability of *Mirkin v. Wasserman*..................................................................7

    E. *Gordon* and *Omega* Do Not Support Spire's Argument That The CAN-SPAM Act Preempts Section 17529.5 ........................8

       *1. The Facts and Law at Issue in Omega World Travel v. Mummagraphics are Markedly Different From the Instant Action* ...........................................................9

       *2. Respondents Misrepresent Gordon v. Virtumundo's Facts, Logic, and Holding*...........................................11

       *3. Congress Intended to Allow Spam Recipients to Sue Under Section 17529.5*.................................................12

       *4. Spire's Argument About From Names Relies on Exploiting a Technical Error in Gordon*.............................14

# I.  TABLE OF CONTENTS (cont.)

**Page**

F.  The District Court's Rulings as to the Spams Were Erroneous ...................................................................16

1.  *The District Court Erred in Failing to Revive the Claims for 108 Emails After Reversing its Prior Order and Ruling that CAN-SPAM Does Not Preempt Section 17529.5 Claims* ...................................................16

2.  *The District Court Erred By Failing to Address Riley's Subject Line Claims Under Section 17529.5(a)(2) and (a)(3)* ...................................................18

3.  *The Spams Spire and Davison Sent to Riley Violate Section 17529.5* ...................................................20

**VIII.  CONCLUSION** ...................................................**24**

**IX.  CERTIFICATE OF COMPLIANCE** ...................................................**25**

**X.  NINTH CIRCUIT LOCAL RULE 28-2.6 STATEMENT** ...................................................**25**

# II.  TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Asis Internet Servs. v. ConsumerBargainGiveaways LLC et al*,
  622 F. Supp. 2d 935 (N.D. Cal. 2009)..........................................5, 6

*Asis Internet Servs. v. Member Source Media LLC*,
  2010 WL 1610066 (N.D. Cal. Apr. 20, 2010)..............................12

*Asis Internet Servs. v. SubscriberBase Inc.*,
  2009 WL 4723338 (N.D. Cal. Dec. 4, 2009) ...............................11

*Asis Internet Servs. v. Subscriberbase Inc.*,
  2010 WL 1267763 (N.D. Cal. Apr. 1, 2010)....................12, 13, 14

*Beyond Systems v. Keynetics Inc.*,
  No. PJM 04-686 (D. Md. Mar. 26, 2007) (order denying
  defendant's motion for other relief under FRCP 7 and second
  renewed motion to dismiss for lack of personal jurisdiction) ......................10

*Gordon v. Virtumundo*,
  575 F.3d 1040 (9th Cir. 2009) ............................................. *passim*

*Hoang v. Reunion.com Inc.*,
  2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) .................................... *passim*

*Omega World Travel v. Mummagraphics*,
  469 F.3d 348 (4th Cir. 2006) ............................................. *passim*

*Sorenson v. Secretary of Treasury*,
  475 U.S. 851 (1986).........................................................6

*Spriestsma v. Mercury Marine*,
  537 U.S. 51 (2002).........................................................5

*Wagner v. Spire Vision LLC et al*,
  2014 WL 889483 (N.D. Cal. Mar. 3, 2014) .................................11

*Williams v. Gerber Products Co.*,
  552 F.3d. 934 (9th Cir. 2008) ....................................19

*Yee v. City of Escondido*,
  503 U.S. 519 (1992).........................................................17, 20

## California Cases

*Balsam v. Trancos Inc. et al*,
  No. CIV471797 (Super Ct. Cal. Cty. of San Mateo Mar. 10,
  2010) (Judgment and Final Statement of Decision)..........................20, 21, 22

iii

## II.  <u>TABLE OF AUTHORITIES (cont.)</u>

**California Cases (cont.)**

*Balsam v. Trancos Inc. et al*,
    203 Cal, App, 4th 1083 (Cal. Ct. App. 2012)........................................ *passim*
*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (Cal. Ct. App. 1998)......................................8
*Ford Dealers Assoc. v. Dept. of Motor Vehicles*,
    32 Cal. 3d 347 (1982) ................................................................7, 8
*Kleffman v. Vonage Holdings Corp.*,
    49 Cal. 4th 334 (2010) ...................................................................6
*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993) ...............................................................7, 8


**Federal Statutes, Legislative Materials, and Rules**

150 Cong. Rec. E72-73 (Jan. 28, 2004) (report of Rep. Dingell)............................7
CAN-SPAM Act, 15 U.S.C. §§ 7701 *et seq.* ................................... *passim*
S. Comm. on Commerce, Science, and Transportation, CAN-SPAM
    Act of 2003,  S. Rep. 108-102 (2003), reprinted in 2004
    U.S.C.C.A.N. 2348 .......................................................................7


**California Statutes**

Cal. Bus. & Prof. Code § 17500 ...........................................................8
Cal. Bus. & Prof. Code §§ 17529, 17529.5 .................................... *passim*
Cal. Civ. Code §§ 1709-1710 ...............................................................8


**Other States' Statutes**

Okla. Stat. tit. 15, § 7761(D).................................................................9

### III.  INTRODUCTION

Respondents' Opening Brief ("ROB") filed by Respondents/Cross-Appellants Davison Design & Development Inc. ("Davison") and the Spire Vision family of companies[1] misstates facts and law and is far more notable for what it does *not* say than for what it does.  ROB dwells excessively on a Fourth Circuit case addressing preemption of *Oklahoma's* anti-spam law and a Ninth Circuit case addressing preemption of *Washington State's* anti-spam law, but in both of those cases the precise allegations of falsity and the other states' statutes were quite different from those in the instant Action.  Moreover, the ROB does not even attempt to oppose several arguments in Defendant/Appellant Cathy Riley's ("Riley") Opening Brief.

The first issue on appeal is whether federal law preempts California state law.  Spire Vision Holdings Inc. *et al*[2] (collectively, "Spire") suggest that *Gordon*[3]

---

[1] Davison is *not* "a group of companies that advertises over the Internet."  *See* ROB at 3.  But the Spire Vision companies – Spire Vision Holdings Inc. *et al* – are. Davison is purportedly an "invention development" company.

[2] Respondents/Cross-Appellants include Spire Vision Holdings Inc., Caivis Acquisition Corp. II, Caivis Acquisition Corp. III, XL Marketing Corp., Spire Vision LLC, ProAdvertisers LLC, Prime Advertisers LLC, MediaActivate LLC, Serve Clicks LLC, Connections Central, SilverInteractive, OpportunityCentral, and Davison Design & Development Inc.

[3] *Gordon v. Virtumundo*, 575 F. 3d. 1040 (9th Cir. 2009).

holds that California's anti-spam statute[4] requires a heightened pleading standard (akin to fraud) such that a claimant must show reliance and damages in order to have standing.

Assuming that this Court agrees with *five of five* post-*Gordon* district courts in the Northern District of California (and *two of two* California courts of appeal) that such a showing is unnecessary, the next question is whether the district court below should have considered the unlawfulness of 108 emails Spire sent to Riley, including in particular whether the Subject Lines of some of the spams advertising Davison were false and/or misleading.

Finally, this Court must decide whether seven emails with misleading Subject Lines that included the *recipient's* name "Cathy Riley" in the *From* Name field violated the statute, where everyone agrees that the emails were *not* from Riley.

This Court should follow well-established principles of statutory construction and conclude that:

- The federal CAN-SPAM Act does not preempt Section 17529.5.

- A California recipient of unlawful spam does not need to show reliance and damages.

- The district court below erred in dismissing 108 spams as categorically preempted, without considering the content of the

---

[4] California Business & Professions Code § 17529.5 ("Section 17529.5").

2

spams, and then failing to revive the 108 spams after ruling that Section 17529.5 is *not* preempted.

- Seven spams advertising Davison that the district court found to be materially misleading – because they included the *recipient's* name in the *From* Name field – violate Section 17529.5.

- Some of the spams advertising Davison also had false and misleading Subject Lines.

## IV.  ARGUMENT

### A.  The CAN-SPAM Act Does Not Preempt California's Anti-Spam Law, Section 17529.5

In *Gordon*, the Ninth Circuit ruled that the CAN-SPAM Act preempts Washington State's anti-spam law because Washington's law is overbroad, prohibiting even truthful spam, and therefore it did not fit into the exception to preemption for false or deceptive spam set forth by 15 U.S.C. § 7707(b)(1).  Spire argues, with no basis for doing so, that California's anti-spam law should be preempted as well… even though Section 17529.5 is limited to false and deceptive spam.

However, every Northern District court and California court of appeal, post-*Gordon*, has ruled that the CAN-SPAM Act does *not* preempt Section 17529.5.  To be more precise, two Northern District courts originally ruled in favor of preemption, but then reversed themselves.  *Hoang v. Reunion.com* initially found that Hoang's claims were preempted, but then after and in direct response to *Gordon*, reversed itself and ruled that the CAN-SPAM Act does *not* preempt

3

Section 17529.5.  2010 WL 1340535 (N.D. Cal. Mar. 31, 2010).  And even in the

District Court below, Judge Hamilton reversed her original ruling and ordered that

the CAN-SPAM Act does not preempt Section 17529.5.

The Ninth Circuit should make clear that even though Washington's anti-

spam law may be overbroad, California recipients of false or deceptive spams are

entitled to the protections of Section 17529.5.

**B.**　**The CAN-SPAM Act's Exception to Preemption Provision Does Not Apply to Common Law Claims**

The CAN-SPAM Act preempts only positive enactments such as "statutes,

regulations, and rules" and not traditional tort theories or fraud.

> (1) In general. This Act supersedes any *statute, regulation, or rule* of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto.
>
> (2) State law not specific to electronic mail. This Act shall not be construed to preempt the applicability of--
>
> 　(A) State laws that are not specific to electronic mail, including State trespass, contract, or *tort law*; or
>
> 　(B) other State laws to the extent that those laws relate to acts of *fraud* or computer crime.

15 U.S.C. § 7707(b) (emphasis added).

Spire's argument – that the CAN-SPAM Act preempts Section 17529.5

absent a showing of reliance and damages – would make the exception to

preemption clause at 15 U.S.C. § 7707(b)(1) superfluous and/or nonsensical because traditional tort theories are excepted from preemption by 15 U.S.C. § 7707(b)(2)(A), and fraud is excepted from preemption by 15 U.S.C. § 7707(b)(2)(B).  The traditional tort theory of fraud is a common law claim which does not constitute a "statute, regulation or rule" for purposes of preemption, *Sprietsma v. Mercury Marine*, 537 U.S. 51, 63 (2002), or the exception to preemption.

Spire's citation to the legislative history of the CAN-SPAM Act, ROB at 14, to support its proposition that it preempts Section 17529.5 is not a novel one.  In *Asis Internet Services v. ConsumerBargainGiveaways LLC et al*, the spammer defendant made precisely the same argument that Spire makes here.  The court rejected the legislative history argument and held:

> Defendants also point to legislative history in support of their fraud requirement. … True, the report referred to "fraudulent or deceptive" conduct rather than "falsity or deception." Although this arguably suggested that the Senate intended to equate "falsity" with "fraud," as some district courts have suggested, it does not account for the additional reference (in the disjunctive) to "deception." Nor do the report's policy concerns necessitate limiting the phrase to fraud alone: a "legitimate business trying to comply with relevant laws" would not be engaged in "deceptive" practices in contravention of the FTC Act or state law.

622 F. Supp. 2d 935, 943-44 (N.D. Cal. 2009) (internal citations omitted).

Interpreting the phrase "falsity or deception" in 15 U.S.C. § 7707(b)(1) to mean fraud, when (b)(2)(B) just below actually uses the word fraud, would contravene the principle that when different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended. *Kleffman v. Vonage Holdings Corp*., 49 Cal. 4th 334, 343 (2010).

The *ConsumerBargainGiveaways* court also noted that interpreting "deception" as used in 15 U.S.C. § 7707(b)(1) to mean only fraud would give the term a different meaning than it would have in other subsections of the CAN-SPAM Act, such as 15 U.S.C. § 7704(a)(2) and 7707(a)(2). *Id*. at 943. Spire's attempt to equate "deception" in 15 U.S.C. § 7707(b)(1) with "fraud" would violate the well-established rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning. *See e.g.* *Sorenson v. Secretary of Treasury*, 475 U. S. 851, 860 (1986).

## C.    Congress Expressly Authorized the States to Regulate False and Deceptive Spams

In ROB at 11-12, and even in the section 1 subhead, Spire argues that "Congress intended to create a single national standard for commercial e-mail when it enacted CAN-SPAM." This is an incomplete and misleading quote, because while the CAN-SPAM Act does state at 15 U.S.C. § 7701(b)(1) that "there is a substantial government interest in regulation of commercial electronic mail on

6

a nationwide basis," the federal law *also* states Congressional intent that emailers not mislead recipients as to the source or content of email (15 U.S.C. § 7701(b)(2)) and that the states can regulate false and deceptive spam (15 U.S.C. § 7707(b)(1)). Congress could have chosen to completely preempt all state statutes, but it chose instead to allow certain state statutes to work in harmony with CAN-SPAM. State prohibitions on falsity or deception are not preempted.

Spire quotes a House of Representatives report of Representative John Dingell in ROB at 14, but that quote does not advance its position because that report – like Senate Report 108-102 – also refers to "falsification techniques *or* deception" (emphasis added)… nothing about reliance, damages, or common-law fraud. Moreover, Spire also claims that the report refers to Section 17529.5 when it discusses state "opt-in laws," but Section 17529.*5* is not an opt-in law. Indeed, the California law Representative Dingell discusses is Section 17529.*2*, which is not at issue in this Action.

**D.    <u>Respondents Misrepresent the Applicability of *Mirkin v. Wasserman*</u>**

Respondents argue that *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993) bars Riley's Counter-Claims because "California courts have always required plaintiffs in actions for deceit to plead and prove the common law element of actual reliance." ROB at 17. *Mirkin* is incorrect on this point. In *Ford Dealers Assoc. v. Dept. of Motor Vehicles*, the California Supreme Court held – 11 years

7

earlier – that statutory claims for deceit do not "require proof of actual reliance upon a false statement knowingly made, as in a common law action in deceit." 32 Cal. 3d 347, 359 (1982). *See* Riley's Opening Brief at 19.

Respondents also gloss over the fact that Riley does not sue for "deceit" under California's general "deceit" statutes (Cal. Civil Code §§ 1709-1710), as was the case in *Mirkin*. Specific statutes trump general statutes, and Section 17529.5 does not require reliance or damages; *recipients* have standing. Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Receipt of unlawful spams results in liability.

Furthermore, in the context of Business & Professions Code § 17500 actions, "fraud" does not mean the traditional common law tort (including reliance), but rather the *likelihood of deception*. Deceit in advertising is not the same as deceit in contractual negotiations, as was the case in *Mirkin*. And *Day v. AT&T Corporation* ruled – more recently than *Mirkin* – that "Allegations of actual deception, reasonable reliance, and damage are unnecessary." 63 Cal. App. 4th 325, 332 (1st Dist. 1998).

**E.** **_Gordon_ and _Omega_ Do Not Support Spire's Argument That The CAN-SPAM Act Preempts Section 17529.5**

The ROB relies almost entirely on two opinions addressing *other* states' anti-spam laws to support Spire's claim that the CAN-SPAM Act also preempts California's anti-spam law, Section 17529.5. However, *neither* of those two decisions – *Omega World Travel, Inc. v. Mummagraphics*, 469 F.3d 349 (4th Cir.

8

2006) in the Fourth Circuit and *Gordon v. Virtumundo Inc.* in the Ninth Circuit[5] –
considered Section 17529.5 at all.  And in the time since those two opinions were
published, all Northern District courts and California courts of appeal that have
heard Spire's argument of extending the preemption rulings of these two cases to
Section 17529.5 have *rejected* the argument, including the District Court below,
which initially accepted Spire's argument but later reversed itself.

### 1.   The Facts and Law at Issue in **Omega** World Travel v. **Mummagraphics** *are Markedly Different From the Instant Action*

Spire cites *Omega* for the proposition that "'falsity or deception' refers to
'traditionally tortious conduct.'"  ROB at 16.  However, the Fourth Circuit was
considering Oklahoma's statute, not Section 17529.5, and the Oklahoma statute
actually uses the term "fraudulent electronic mail message."  Okla. Stat. tit. 15,
§ 7761(D).

In the *Omega* spams, the only alleged falsity was immaterial technical errors
that most email users *would never see*, arising from a software configuration error.
The *Omega* opinion repeatedly referred to "immaterial error," "immaterial
misrepresentations," "bare error," and "an isolated error," and the court noted that
state laws providing a cause of action for "bare error" in commercial email would
frustrate Congress' goal of a "national standard."  469 F.3d. at 353-55, 359.  There

---

[5] The other cases cited in ROB at 20-21 also deal with Washington State's anti-spam law, not California's.

were no allegations that the *Omega* spams had multiple, *material* problems like the spams in this action: misrepresented From Names, misleading and not readily traceable domain name registrations, and false and misleading Subject Lines.  In sharp contrast to the instant spams, which required recipients to open them before they could attempt to identify the advertiser and never identified Spire as the sender, "The [Omega] e-mails at issue were chock full of methods to 'identify, locate, or respond to' the sender or to 'investigate [an] alleged violation' of the CAN-SPAM Act."  *Id.* at 357.

*Omega* does *not* state that the CAN-SPAM Act categorically preempts all state anti-spam laws except for common-law fraud.  The *Omega* court only considered the claims of a particular plaintiff suing under Oklahoma law, and found that *his* claims were preempted because they were based on immaterial falsity and technical error.  *Id.* at 353-55, 359.  *Omega*'s facts and holding are so narrow that a district court in Maryland – *part of the Fourth Circuit* – did not follow *Omega* when it held that the CAN-SPAM Act did *not* preempt Maryland's anti-spam law.  *Beyond Systems v. Keynetics Inc.*, No. PJM 04-686 (D. Md. Mar. 26, 2007) (order denying defendant's motion for other relief under FRCP 7 and second renewed motion to dismiss for lack of personal jurisdiction).  Thus, *Omega* cannot have general applicability.

*Omega* merely held that the federal statute preempted certain state law claims "imposing strict liability for insignificant inaccuracies" or "errors." *Omega*, 469 F.3d at 355. It did not hold that CAN-SPAM preempts state law claims that do not sound in common law fraud or otherwise require a showing of reliance and damages.

### 2. *Respondents Misrepresent* Gordon v. Virtumundo's *Facts, Logic, and Holding*

Spire's argument that *Gordon* requires this Court to rule that CAN-SPAM preempts Section 17529.5 has also been made and rejected by every court that has heard this argument. Most recently, in *Wagner v. Spire Vision LLC et al*, 2014 WL 889483 at *3 (N.D. Cal. Mar. 3, 2014) the district court held:

> Neither the Fourth Circuit [*Omega*] nor our circuit's decisions [*Gordon*] resolve the question of whether a plaintiff can only plead "falsity or deception" by pleading all the elements of common law fraud, or whether the CAN-SPAM Act spared Section 17529.5 plaintiffs from pleading reliance and damages.
>
> The great weight of district court and state court decisions have agreed that a showing of reliance and damages is not necessary.

*See also, e.g., Hoang v. Reunion.com Inc.*, 2010 WL 1340535 at *1, *Asis Internet Servs. v. SubscriberBase,* 2009 WL 4723338 at *3 (N.D. Cal. Dec. 4, 2009), *Asis Internet Servs. v. Member Source Media,* 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010). In support of its argument, Spire cites only to an early order in this case – an order that the district court below subsequently reversed.

11

*Gordon* does not require categorical preemption of state anti-spam laws. Nor does it stand for the proposition of preemption absent common-law fraud. Critically, *Asis Internet Services v. SubscriberBase Inc.* pointed out that the Ninth Circuit ruled that Jim Gordon's claims were preempted *not* because he did not allege reliance and damages, but rather because Washington's anti-spam law was overbroad and "purport[ed] to regulate a vast array of *non*-deceptive acts and practices." No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645 at *31-32 (N.D. Cal. Apr. 1, 2010) (emphasis in original).

Thus, *Gordon* has little relevance to this Action because the Ninth Circuit ruled only that *Washington's* anti-spam law was preempted because it was overly broad, prohibiting even "truthful spam," such that it did not fit into the exception to preemption set forth at 15 U.S.C. § 7707(b)(1). But *California's* anti-spam law has a standalone subsection, Section 17529.5, that is expressly limited to falsified, misrepresented, forged, and misleading spam. Therefore, Section 17529.5 fits squarely within the exception to preemption.

### 3.   *Congress Intended to Allow Spam Recipients to Sue Under Section 17529.5*

Spire cites to *Asis v. Subscriberbase* at ROB 19 for the proposition that Section 17529.5 allows a broader scope of plaintiffs than that intended by Congress. This is a misstatement of law and fact. Section 17529.5 does allow for a broader scope of plaintiffs than Congress intended *to be able to sue under the*

*CAN-SPAM Act*, but Congress did not determine who can sue under Section 17529.5, or any other state's anti-spam law. Congress left it to the states to regulate false or deceptive spams pursuant to their traditional police powers. Moreover, Congress was aware of California's anti-spam regulations, *see Hoang*, 2010 WL 1340535 at *17-19, and chose to save Section 17529.5 from preemption while preempting Section 17529.2, which would have prohibited truthful spam.

Moreover, Spire refers to *Asis v. Subscriberbase*'s acknowledgment of the broader scope as if it were a problem. ROB at 19. However, the *Subscriberbase* court explained why there is nothing wrong or impermissible about individual spam recipients having standing to sue under Section 17529.5 even if they don't have standing under the CAN-SPAM Act.

> By eschewing the standing requirements of the CAN-SPAM Act, *section 17529.5* allows a broader scope of plaintiffs -- including Asis and Foggy -- to bring suit against email advertisers. However, to the extent that Plaintiffs seek only to enforce *section 17529.5(a)(3)*, the section remains within the narrow subject matter that Congress  has explicitly left to state regulation. The CAN-SPAM Act's preemption provision grants states the authority to regulate certain behavior, and specifically to "prohibit [] falsity or deception in any portion of a commercial electronic mail message," without regard to the methods that states may use to enforce these prohibitions. *15 U.S.C. § 7707(b)(1). It would be both unnecessary and disingenuous to attempt to impose parity in the standing provisions between the two statutes, by imposing a narrow reading on Congress's express reservation of this right for the states.* This Court will not find that Congress has superseded California's

> power to authorize this kind of enforcement mechanism without a showing that this was Congress's "clear and manifest purpose," particularly "when Congress has legislated in a field traditionally occupied by the States." *See Altria Group, Inc. v. Good, 129 S. Ct. 538, 543, 172 L. Ed. 2d 398 (2008). The Court therefore finds that section 17529.5 does not overstep the scope of authority designated to California under the CAN-SPAM Act.*

2010 U.S. Dist. LEXIS 33645 at *41-42 (footnote omitted) (emphasis added).

### 4.   *Spire's Argument About From Names Relies on Exploiting a Technical Error in* Gordon

Spire cites *Gordon* for the proposition that misleading From Names

themselves do not constitute a material misrepresentation.  ROB at 22.  However,

to the extent *Gordon* may support that proposition – which Riley disputes – that

argument is based on a factual and technical error.  In *Gordon,* the court stated:

> The "from lines" at issue contain two components: a "from name" field, which typically references a topic or subject matter of the advertisement, and a domain name. Examples of "from lines" condemned by Gordon include "CriminalJustice@vm-mail.com,"  "PublicSafetyDegrees @vmadmin.com,"and "TradeIn@vm-mail.com."

575 F.3d at 1064.

This statement is factually incorrect.  A From Line consists of two

components: the From Name and the Sender Email Address.  The Sender Email

Address is made up of two components: the user name and, following the @ sign,

a domain name.[6]  So, what *Gordon* referred to as From Lines (e.g.

"CriminalJustice@vm-mail.com") are *not* actually From Lines, but rather

"electronic mail addresses."  And what *Gordon* referred to as From Names (e.g.

"CriminalJustice") are not From Names as referred to in this Action, but rather

user names.  Riley cannot point to evidence in the record because this argument

was not raised below.

    As used in Riley's Counter-Claims and throughout this litigation, From

Names (sometimes referred to in the email marketing industry as a "Friendly

From," "Sender Name," or "Display Name") refer to the quoted text associated

with an email address.  Respondents acknowledge as much, referring to "Best Car

Insurance" and "Internet Job Locator Online" as examples of From Names.  ROB

at 23.  When a person sees a list of emails in his or her inbox, the From Names –

but *not* the Sender Email Addresses – are typically what appears to indicate who

the emails are from.  ER 010.  *See also Balsam v. Trancos, Inc.* 203 Cal. App. 4th

---

[6] "'Electronic mail address' or 'e-mail address' means a destination, commonly
expressed as a string of characters, to which electronic mail can be sent or
delivered.  An 'electronic mail address' or 'e-mail address' consists of a user name
or mailbox and a reference to an Internet domain."  Cal. Bus. & Prof. Code
§ 17529.1(g).

"Electronic mail address.  The term 'electronic mail address' means a destination,
commonly expressed as a string of characters, consisting of a unique user name or
mailbox (commonly referred to as the 'local part') and a reference to an Internet
domain (commonly referred to as the 'domain part'), whether or not displayed, to
which an electronic mail message can be sent or delivered."  15 U.S.C. § 7702(5).

1083, 1092 (Cal. Ct. App. 2012).  As such, *Gordon* does not stand for the proposition that misleading *From Names* are immaterial misrepresentations, as Spire claims, because *Gordon* was really referring to unique *user names*.  Spire deliberately piles more confusion on top of the *Gordon* court's confusion, attempting to mislead this Court about what From Line, From Name, user name, and domain name really mean, for the purpose of obscuring the basic tenet that a From Name is supposed to say who an email is from.

The District Court below demonstrated its understanding of what the From Name means, because two of the seven revived spams had the From Lines:

- "Cathy Riley DavisonDesigns" <info@getsmartnews.net>

- "Cathy Riley DavisonDesigns" <info@yourfinancialcontact.com>

Thus, if the issue were about Riley's name in the *user name*, the District Court would have only revived *five* spams, and not seven.  Reviving *seven* spams shows that the falsity at issue involves the *From Name*, not the *user name*.

F.     **The District Court's Rulings as to the Spams Were Erroneous**

1.     *The District Court Erred in Failing to Revive the Claims for 108 Emails After Reversing its Prior Order and Ruling that CAN-SPAM Does Not Preempt Section 17529.5 Claims*

The District Court initially held that the CAN-SPAM Act preempted Riley's Counter-Claims under Section 17529.5 as to all of the spams.  ER at 042.  The District Court subsequently revived claims for seven of those spams, holding that

16

those seven emails could potentially support a claim for fraud, because the From Names that included Riley's name – which Spire admitted were *not from* Riley – were materially false.  ER at 037.

The District Court's final order held, in accordance with other district courts addressing Section 17529.5, that plaintiffs with claims under Section 17529.5 do not need to prove reliance and damages to escape CAN-SPAM preemption.

However, in that same Order, the District Court failed to revive Riley's claims as to the 108 emails that it had previously dismissed with prejudice precisely because the District Court had found that Riley's claims were preempted. The District Court never reviewed *any* of those 108 spams to determine whether or not the emails complied with the statute.  ER at 005-006.

The ROB completely fails to address Riley's argument that the District Court erred by failing to revive the 108 emails after its final ruling that Section 17529.5 claims are *not* preempted.  Instead, Spire relies on a bald assertion, with no foundation or analysis, and ignoring substantive California law, *infra*, that CAN-SPAM precludes claims based on misleading and/or generic From Names under Section 17529.5(a)(2).  ROB at 25-27.   But Spire never raised this argument in the District Court below and cannot do so now.  *Yee v. City of Escondido*, 503 U.S. 519, 534-535 (1992).

### 2. The District Court Erred By Failing to Address Riley's Subject Line Claims Under Section 17529.5(a)(2) and (a)(3)

Spire misstates Riley's argument regarding Subject Line violations under Section 17529.5(a)(3) in the seven revived Davison spams as a dispute over the word "free" in the Subject Lines. ROB at 27-28. But the Subject Lines that Spire cites in ROB at 28 are not the Subject Lines of any of the seven Davison spams that the District Court addressed in its final order. ER at 005-006. The Subject Lines in ROB at 28 are Subject Lines of some of the *other* spams in this Action, but Riley never alleged that *those* Subject Lines violated Section 17529.5 because they contain the word "free."

Rather, Riley alleges that some of the Subject Lines in the seven revived Davison spams violate the statute because they are both absolutely false (violating Section 17529.5(a)(2)) and misleading relative to the contents of the spams (violating Section 17529.5(a)(3)), by misrepresenting Davison's abilities at new product development. For example, a Subject Line "Invent and We will develop it" is false if Davison cannot actually develop new products. "Invent and We will develop it" is also misleading relative to the body if the body indicates, in tiny type, that Davison does *not* actually do many important aspects of new product development.[7]

---

[7] Davison's website admits that *99.97*% of would-be inventors lost money working with Davison, and *every* new inventor-client in 2011, when Davison advertised in

The Ninth Circuit has held that even truthful fine print cannot correct misleading prominent initial representations.

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Williams v. Gerber Products Co*., 552 F.3d. 934, 939-40 (9th Cir. 2008).

Therefore, Davison cannot boldly advertise up front (in the Subject Lines) that it can develop new products, and then disclaim it in the fine print (in the bodies of the spams).

---

the spams at issue, lost money working with Davison. ER at 12. Davison also discloses that only *0.001%* of its income came from royalties on licenses of consumers' products, which means that *99.999%* of Davison's income comes from up-front flat fees paid by would-be inventors. Since every "Davison licensing deal" has a royalty component, and since just 0.001% of Davison's income comes from royalties, Davison's disclosures indicate that it has no real ability to actually develop products and bring them to market. *Id.* The spams give no hint of Davison's extraordinarily high failure rate or a direct link to this critical information. Would-be inventors cannot reasonably expect Davison to guarantee *results*. However, the fact that Davison does not even go through the *process* of new product development means that these Subject Lines are false and misleading.

Davison never responded to Riley's discovery related to its new product development capabilities. ROB fails to address the truthfulness, or lack thereof, of the Subject Lines of the spams advertising Davison at all. When the District Court granted Spire's Motion for Summary Judgment in its final order, the Court erred by utterly failing to acknowledge Riley's Subject Line arguments under Section 17529.5(a)(2) and (a)(3). *Compare* ER at 004-007 *with* ER at 011-015.

Riley's Subject Line argument is completely independent of her From Name argument, but the District Court ignored it altogether when it granted Spire's Motion for Summary Judgment.

### 3.    *The Spams Spire and Davison Sent to Riley Violate Section 17529.5*

In ROB at 23-28, Spire delves into a fact-specific discussion of the spams at issue, even though it never raised these arguments in the District Court below. *Yee v. City of Escondido, supra*. Nevertheless, in an abundance of caution, Riley responds as follows:

In *Balsam v. Trancos Inc. et al* – the first Section 17529.5 case to go to trial (other than small claims) – the trial court ruled that generic, descriptive terms in the From Name violate Section 17529.5 because they misrepresent *who* the spams are from.

> Paid Survey is not the name of any existing company, but rather treats the "from" line as though an additional "subject" line. . . . Again, there is no actual business named Your Business . . . . The business is not named

> Christian Dating . . . . There is no business named "Your Promotion" . . . . Once again, there is no company "BankWireTransferAvailable". . . . Needless to say, there is no company named Dating Generic . . . . The email [ ] sates it is from "Join Elite" [but] no true sender is identified. . . .
>
> Other than the email for eHarmony, which does state that it is from eHarmony, *the seven other emails do not truly reveal who sent the email. Thus the sender information ("from") is misrepresented.* [ ] The rest of the "senders" identified in the headers of the other seven emails do not exist or are otherwise misrepresented, namely Paid Survey, Your Business, Chriastian Dating, Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite.

No. CIV471797 at *6-10, 23 (Super Ct. Cal. Cty. of San Mateo Mar. 10, 2010) (Judgment and Final Statement of Decision) (emphasis added). *See* Addendum. The court of appeal repeated the trial court's findings and "affirm[ed] the judgment in all respects." *Balsam*, 203 Cal. App. 4th at 1090, 1088.

Notwithstanding ROB at 3, 14, 23, 27, Riley never suggested that the From Name must include the advertisers' full legal names, nor does she attempt to impose "labeling requirements." Rather, Riley argues only that whatever text appears in the From Name, in accordance with substantive California law, should not misrepresent *who* a spam is from. "Truth" is not a labeling requirement. *See* ROB at 23. If it were, then Spire could put literally *anything* it wants into the From Name field of the spams it sends, with impunity. That was not Congress' intent – "senders of commercial electronic mail should not mislead recipients as to

21

the source or content of such mail," 15 U.S.C. § 7701(b)(2) – but if it were, then there would have been no need for an exception to preemption for falsity or deception in the first place.

"Best Car Insurance" may be a sufficient Subject Line (puffery aside), but Spire admits that *describing* an advertisement and stating the *type* of advertisement is not the same thing as saying *who* it is *from*.  ROB at 3, 23.  How is the recipient supposed to know, looking at the From Name in the inbox view, that "Best Car Insurance" means the spam is from QuoteWizard LLC?  Probably hundreds if not thousands of entities could describe themselves that way.  Spire treats the From Name as advertising copy or an extension of a Subject Line, even though such generic text violates substantive California law – *Balsam, supra* – because it misrepresents *who* the spams are from.

In *Balsam*, the court awarded liquidated damages for each spam with a generic/descriptive From Name, without requiring proof of reliance or actual damages.  Here, although the District Court never reviewed 108 of the spams' From Names, most of them had generic/descriptive From Names such as "Best Car Insurance" and "Internet Job Locator Online."  ROB at 23.  Thus, these spams violate substantive California law as set forth by Section 17529.5 and *Balsam*.

Arguing that accurate information in the body of a spam cures misrepresentations in the header, Spire claims that "It is undisputed that the bodies

of the e-mails prominently disclose each advertiser's name and address in close proximity." ROB at 3. Spire's single example at SER 038 does not prove its assertion. In fact, Riley *does* dispute this claim, because some of the spams do *not* identify the advertiser and its address at all, but the District Court below never actually examined 108 of the spams at issue. The spams are certainly not "chock full" of means to identify Spire Vision, who actually sent the spams advertising Davison and other entities. Moreover, Riley points out that most of the spams at issue in *Balsam* actually did identify the advertiser in the body, and by awarding statutory damages of $1,000 per spam, the trial court and the court of appeal ruled that truthful information in the body does *not* cure misrepresented information in the headers.

Finally, in *Gordon*, the spam recipient agreed that the domain names used to send the spams he received were properly registered to Virtumundo. 575 F.3d at 1064. But that is not the case here, because Spire registered the domain names it used to send the spams to nonexistent entities "Connections Central" and "Silver Interactive," which were not readily traceable to any of the Spire Vision companies. This issue is not included in the Excerpts of Record because the District Court never considered Riley's Counter-Claims on the merits.

# VIII.  CONCLUSION

Every post-*Gordon* Northern District and California court of appeal considering federal preemption of Section 17529.5 – including, in the end, the District Court below – has ruled that California's anti-spam law fits within the exception to preemption specified by the CAN-SPAM Act, and a spam recipient does not need to prove reliance and actual damages to avoid preemption.  To hold otherwise would violate the rules of statutory construction and common sense.

This Court should then remand for further proceedings, if for no other reason than for the court below to consider the arguments it ignored.

THE LAW OFFICES OF DANIEL BALSAM

Date: July 7, 2014          By:   s/ Daniel L. Balsam
                                  Daniel L. Balsam
                                  Attorneys for Defendant/Appellant
                                  Cathy Riley

## IX.  CERTIFICATE OF COMPLIANCE
### (Federal Rules of Appellate Procedure, Rule 32(a)(7)(c))

1.   This brief complies with the type-volume limitation of Fed. R. App. P.
     32(a)(7)(B) because:

     [ X ]  this brief contains 5,661 words, excluding the parts of the brief
            exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P.
     32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

     [ X ]  this brief has been prepared in a proportionally spaced typeface using
            Microsoft Word 2003, Times New Roman 14 point.


Signature:_____s/ Daniel L. Balsam_____

Attorney for:_____Defendant/Appellant Cathy Riley_____

Date:_____July 7, 2014_____


## X.  NINTH CIRCUIT LOCAL RULE 28-2.6 STATEMENT

Defendant/Appellant Riley is not aware of any related cases pending before

this Court.


25

**ADDENDUM TO APPELLANT'S REPLY BRIEF**

*Balsam v. Trancos Inc. et al*, No. CIV471797 (Super. Ct. Cal. Cty. of San Mateo

Mar. 10, 2010) (Judgment and Final Statement of Decision)

**ENDORSED FILED**
SAN MATEO COUNTY

MAR 1 0 2010

Clerk of the Superior Court
By TERRI MARAGOULAS
DEPUTY CLERK

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN MATEO

| | |
|---|---|
| DANIEL L. BALSAM, | Civil No. 471797 |
| Plaintiff, | **JUDGMENT AND FINAL STATEMENT OF DECISION** |
| vs. | |
| | Dept. 2, Hon. Marie S. Weiner |
| TRANCOS, INC., et al., | |
| Defendants. | |

_____/

This matter was assigned for trial in Department 2 of this Court before the Honorable Marie S. Weiner. Timothy Walton, Esq. appeared on behalf of Plaintiff Daniel Balsam, and Robert Nelson of Nelson & Weinkauf appeared on behalf of the remaining Defendants Trancos Inc. Brian Nelson, and Laure Majcherczyk. Plaintiff voluntarily dismissed Defendant Laure Majcherczyk during the course of the trial.

A Court Trial commenced in this action on October 14, 2009 and concluded the presentation of evidence and oral argument on October 19, 2009. As set forth on the record, this Court held that Plaintiff has no standing to sue under the second cause of action for violation of the Consumers Legal Remedies Act, Civil Code Section 1750 *et seq.*, as Plaintiff was not a "consumer" of any goods or services as defined in Civil Code

Section 1761(d), and as Plaintiff did not sustain "any damages" caused by Defendants'
alleged conduct as required by Section 1780.[1]  See <u>Buckland v. Threshold Enterprises
Ltd.</u> (2007) 155 Cal.App.4th 798, 809.

The Court also held that Plaintiff's first cause of action for violation of Business &
Professions Code Section 17529 *et seq.* is not pre-empted under federal law, for the
reasons set forth on the record, which are incorporated herein by reference without
repeating.  Further, it was undisputed that Plaintiff had no claim for actual injury or actual
monetary damages from any violation of the Business & Professions Code.

It was agreed by counsel for the parties that the third cause of action for
declaratory relief was duplicate of the first cause of action.

According, the Court held that Plaintiff was not entitled to a trial by jury, and
proceeded with a court trial.

---

[1]    Plaintiff now argues, as an "objection" to the tentative decision, that he
need not show "actual damages" in order to sue under the Consumer Legal Remedies Act.
Plaintiff ignores the fact that there was no evidence that Plaintiff sustain *any* monetary
loss.  Plaintiff relies upon <u>Meyer v. Sprint Spectrum L.P.</u> (2009) 45 Cal.4th 634, but that
case held, consistent with this Court's ruling, that a violation of CLRA is not enough – the
Plaintiff must have sustained some monetary implication *caused by* the defendant's
violation of the law.  <u>Meyer</u>, at p. 641 ("If the Legislature had intended to equate 'any
damage' with being subject to an unlawful practice by itself, it presumably would have
omitted the causal link between 'any damage' and the unlawful practice, and instead
would have provided something like 'any consumer who is subject to a method, act, or
practice declared to be unlawful by Section 1770 may bring an action' under CLRA.")
The Supreme Court stated in <u>Meyer</u> that tort damages are not required, but "any damage"
may include transaction costs and opportunity costs. <u>Id.</u>, at p. 640.  Plaintiff had no
evidence of any economic loss or costs incurred.

2

Based upon a preponderance of the evidence presented at trial, and having considered the objections and responses to the tentative statement of decision, THE COURT FINDS as follows:

### Material Facts Presented

This case presents issues of first impression as to interpretation and application of Business & Professions Code sections which prohibit spam emails.

Plaintiff Daniel Balsam is a licensed California attorney with experience in consumer protection litigation. Plaintiff Balsam is also a named plaintiff and/or attorney representing plaintiffs in dozens of lawsuits since 2002 against companies for unsolicited commercial email advertising, commonly known as "spam" emails. Plaintiff has a website named "DanhatesSpam.com", undertakes efforts to track spammers, and has a weblog ("blog") with articles regarding spam litigation. Plaintiff personally has over 100 email addresses.

Plaintiff is a San Francisco resident who owns four computers, all of which are located in California. The subject of this lawsuit are eight emails sent to his email address dan_in_sf@yahoo.com. This constitutes a "California address" under B&P Code Section 17529(b). Plaintiff received these eight emails in July and August 2007. It is undisputed that the emails were sent by Defendant Trancos Inc.

Brian Nelson is the CEO and founder of Defendant Trancos Inc. Defendant Trancos has 44 employees and three offices (the headquarters in Redwood City, in Malibu, and in New York). Defendant Trancos owns/registered 477 different domain names. These are privately registered through DomainsByProxy. Defendant privately registers its domain names and uses DomainsByProxy so that reference to that site by

3

members of the public would not reveal the true owner of the domain name. The purpose
of private registration of these domain names by Defendant was to avoid complaints by the
public, and avoid getting direct complaints by members of the public. Indeed, Defendant
previously had threatening phone calls from people who wanted to opt-out of their email
lists. Use of private registration avoided receiving threatening phone calls over unsolicited
emails. Rather, Defendant would require, by this method, that unhappy people would
have to (1) leave message with Domains By Proxy to supposedly forward to Trancos
and/or (2) affirmatively unsubscribe by opting out from the domain name communication.

During the relevant time period, namely the Summer of 2007, Trancos had a
division called Meridian. It managed nine email lists including Hi-Speed Media email lists.
Defendant would find internet advertisers, and send advertisements using email lists
provided by Hi-Speed Media/ValueClick (which is a huge network advertiser).

It was Nelson's understanding that Hi-Speed Media/ValueClick obtained emails
subject to the proviso that the emails could be used for itself or its "partners", and by this
broad authorization Hi-Speed could use emails of its customers for any commercial use
whatsoever as long as it shared in the revenue. Hi-Speed Media provided (and kept
ownership) of the email address lists and Trancos "managed" the lists and used them to
send out email advertisements. Revenue from the advertising was then split between
Trancos and Hi-Speed Media. This arrangement commenced in June 2007 and was
terminated in September 2007 – because Trancos was losing money or not making money.
Meridian is no longer a division of Trancos since its efforts were discontinued in 2007.
Thus Defendant has stopped doing the allegedly wrongful conduct of which Plaintiff
complains.

Defendant Trancos Inc. sent eight emails to Plaintiff. As best as Defendant can determine, Trancos obtained Plaintiff's email address from GiveAwayCafe.com, which is owned by Hi-Speed Media, which is owned by Value Click. Defendant used eight different domain names to send the eight emails to Plaintiff.

According to each of the eight emails, Plaintiff allegedly gave consent for use of his email address on "2007 July 11" for IP address 64.184.86.246. Plaintiff presented uncontradicted evidence that Plaintiff *never* consented to receive any of these eight emails from any of the sources, including Defendant Trancos, Hi-Speed Media, ValueClick, Give Away Cafe.com, and the eight advertisers.

Defendant Nelson testified that it is possible for someone – who is not Plaintiff – to type Plaintiff's email address into the website of Give Away Cafe.com, and thereby "authorizing" use of Plaintiff's email. Thus it is possible that email is used by an advertiser or list collector which is not authorized by the true person.

The eight emails received by Plaintiff from Defendant Trancos are as follows, in order as set forth in Trial Exhibit #2:

Email #1:    The email from IP address 75.140.65.221, dated July 22, 2007, states it is from "Paid Survey" with an email address of survey@misstepoutcome.com. The Subject stated is "Get paid 5 Dollars for 1 survey". The content in the body of the email is a commercial advertisement purportedly by Survey Adventure. In regard to opting out of future emails, it states at the end of the email:

> To block further mailings, write to: Strategic Financial Publishing, Inc., 10535 E.
> Washington Street, Ste. 310, Indianapolis, IN 46229-2609 or
> http://misstepoutcome.com/soi?m+79444&!=2

> We hope you enjoyed receiving this email, but if you no longer wish to receive our
> emails please click here.

5

USAProductsOnline.com
11870 Santa Monica Blvd. Suite #106-529
Los Angeles, C.A. 90025

Paid Survey is not the name of any existing company, but rather treats the "from" line as though an additional "subject" line. Evidence was presented that there is no company actually named misstepoutcom and no website named www.misstepoutcome.com, but rather this is nonsensical name for one of Defendant Trancos' hundreds of privately registered domain names. Brian Nelson never had any communications with anyone at Strategic Financial Publishing nor Survey Adventure.

If one clicks on the advertisement for Survey Adventure, you do *not* "get paid 5 dollars for 1 survey". Indeed, you are obligated to sign up for three offers, then take multiple surveys and have no guarantee of getting paid anything by anyone for taking the survey. Of the people who testified at trial, no one who actually tried the website got paid for taking a survey.

There is no actual company named USAProductsOnline.com nor USA Products Online. No such entity is registered as a corporation, LLC or limited partnership to do business in the State of California, and is not a registered fictitious business name in Los Angeles County or San Mateo County. There is no website at www.USAProductsOnline.com. This is a domain name created by Defendant Trancos which has no real existence.

Email #2:      The email from IP address 75.140.65.217, dated July 21, 2007, states it is from "Your Business" with an email address of franchisegator@modalworship.com. The Subject stated is "Be Your Own Boss! You could own a franchise!" The content in the body of the email is a commercial

6

advertisement purportedly by Franchise Gator. In regard to opting out of future emails, it

states at the end of the email:

> To unsubscribe, click here. Or mail a copy of this email to:
> Franchise Gator
> 315 5th Ave S, Suite 100
> Seattle, WA 98104

> We hope you enjoyed receiving this email, but if you no longer wish to receive our
> emails please click here.

> USAProductsOnline.com
> 11870 Santa Monica Blvd. Suite #106-529
> Los Angeles, C.A. 90025

Again, there is no actual business named Your Business, no actual entity named

modalworship, no website at www.modalworship.com, and no actual entity named USA

Products Online or USAProductsOnline.com. The name of the true sender, Trancos,

appears nowhere.

Email #3:        The email from IP address 75.140.65.210, dated July 27, 2007,

states it is from "Christian Dating" with an email address of

ChristianDating@moussetogether.com. The Subject stated is "Date single Christians".

The content in the body of the email is a commercial advertisement purportedly by

ChristianCafe.com. In regard to opting out of future emails, it states at the end of the

email:

> Unsubscribe: To stop receiving email messages from or on behalf of ChristianCafe.com
> write to: 600 Alden Road, Suite 210, Markham, ON L3R 0E7

> We hope you enjoyed receiving this email, but if you no longer wish to receive our
> emails please click here.
> USAProductsOnline.com
> 11870 Santa Monica Blvd. Suite #106-529
> Los Angeles, C.A. 90025

7

No evidence was presented as to whether ChristianCafe.com actually exists or references a real business. The business is not named Christian Dating. There is no actual entity "moussetogether", no website at www.moussetogether.com, and no actual entity named USA Products Online.com. The name of the true sender, Trancos, appears nowhere.

Email #4:    The email from IP address 75.40.65.209, dated July 27, 2007, states it is from "Your Promotion" with an email address of YourPromotion@mucousmarquise.com. The Subject stated is "Workers Needed Online". The content in the body of the email is a commercial advertisement giving no indication of the name of the advertiser or business. In regard to opting out of future emails, it states at the end of the email:

> Ad Sponsors LLC 4301 N.W. 63rd St., Suite 105 Oklahoma City, OK 73116
> Follow this link for removal: http//mucousmarquise.com/soi?m=151444&!=1
>
> We hope you enjoyed receiving this email, but if you no longer wish to receive our emails please click here.
> USAProductsOnline.com
> 11870 Santa Monica Blvd. Suite #106-529
> Los Angeles, C.A. 90025

There is no business named "Your Promotion", no entity called mucousmarquise nor any website at www.mucousemarquise.com. The nature of Ad Sponsors LLC is unknown. There is no USA Products Online.com. The name of the true sender, Trancos, appears nowhere.

Email #5:    The email from IP address 75.140.65.226, dated July 31, 2007, states it is from "Bank Wire Transfer Available" with an email address of BankWireTransferAvailable@minuteprovenance.com. The Subject stated is "Sign up for a 24-hour Renters Cash Advance". The content in the body of the email is a commercial

8

advertisement giving no indication of the name of the advertiser or business. On the contrary, the small print at the end of the ad states that the advertiser is a conduit for financial institutions and is not a lender itself, but rather only a "sponsor". These are for usurious loans of 300% to 800%. In regard to opting out of future emails, it states at the end of the email:

> To stop further mailings, visit this link: https:// secure. renterscashadvance. com/unsubscribe.php or write: RentersCashAdvance, 260 West 36th Street FL 10, New York NY 10018.
>
> We hope you enjoyed receiving this email, but if you no longer wish to receive our emails please click here.
>
> USAProductsOnline.com<br>11870 Santa Monica Blvd. Suite #106-529<br>Los Angeles, C.A. 90025

Once again, there is no company "BankWireTransferAvailable", there is no entity "minuteprovenance", no website at minuteprovenance.com, no entity Renters Cash Advance, and no entity USA Products Online.

Email #6:    The email from IP address 75.140.65.228, dated August 11, 2007, states it is from "eHarmony" with an email address of eHarmony@minecyclic.com. The Subject states is "You Could Be in Everlasting Dating Harmony". The content in the body of the email is a commercial advertisement by eHarmony for their singles-matching services. There is an opt-out opportunity at the end of the email, by mail or by clicking a link *with eHarmony*. It is undisputed that eHarmony is a real company, generally known to the public. There is also an opt-out opportunity allegedly with USAProductsOnline.com. Apparently, Plaintiff's claim is based upon the non-existence of minecyclic and USA Products Online, and the lack of identification of Trancos.

9

Email #7:    The email from IP address 75.140.65.206, dated August 14, 2007,

states it is from "Dating Generic" with an email address of

dating@mythicaldumbwaiter.com.  The Subject is "It's a Great Time to Say Hello to

Someone New!"  The content in the body of the email is a commercial advertisement with

no identification of the advertiser or business.  Instead it contains a suggestive photo of a

young woman, scanty clad in lingerie.  There is not even a name of the entity whom you

could contact to unsubscribe in the first instance.  In regard to opting out of future emails,

it states at the end of the email:

> We respect your privacy.  If you wish to no longer receive emails like this one, please
> click here to unsubscribe and your email address will be removed from future email
> promotions.  You can also unsubscribe by writing to us at 800 El Camino Real Suite
> #180, Mountain View, CA  94040.  Please allow up to 10 days upon receipt to process
> physical mail.
>
> We hope you enjoyed receiving this email, but if you no longer wish to receive our
> emails please click here.

USAProductsOnline.com
11870 Santa Monica Blvd. Suite #106-529
Los Angeles, C.A. 90025

Plaintiff Daniel Balsam investigated the address listed in Mountain View,

California.  At that address, Plaintiff found that it was a shared suite with no company

named listed at all.  Thus, even if mail was sent, there would be no one to direct the mail

*to*, because multiple businesses are sharing the suite.  Thus the physical address given for

mailing an opt-out is useless.

Needless to say, there is no company named Dating Generic, no entity Mythical

Dumbwaiter, no website mythicaldumbwaiter.com, and no entity USA Products Online.

Email #8:    The email from IP address 75.140.65.204, dated August 13, 2007,

states it is from "Join Elite" with an email address of JoinElite@nationalukulele.com  The

10

Subject stated is "Get your criminal Justice Degree". The content in the body of the email

is a commercial advertisement about getting a criminal justice degree, but there is no

identification of any person, company or business as the advertiser. No true sender is

identified. Plaintiff clicked on the ad, and was transferred to "Find the Right School",

which lists several online universities, but no identification of the business sponsor.

In regard to opting out of future emails, it states at the end of the email:

> We respect your privacy. If you wish to no longer receive emails like this one, please
> click here to unsubscribe and your email address will be removed from future email
> promotions. You can also unsubscribe by writing to us at 800 El Camino Real Suite
> #180, Mountain View, CA 94040. Please allow up to 10 days upon receipt to process
> physical mail.
>
> We hope you enjoyed receiving this email, but if you no longer wish to receive our
> emails please click here.

USAProductsOnline.com
11870 Santa Monica Blvd. Suite #106-529
Los Angeles, C.A. 90025

As set forth above, Plaintiff Daniel Balsam investigated the address listed in Mountain

View only to find that it is a shared suite with no company name identified and no way for

mail to be delivered to a particular person or company. As set forth above, there is no

USA Products Online. There is no entity named Join Elite nor named national ukulele.

Plaintiff Daniel Balsam investigated the address of USAProductsOnline.com,

which is listed at the end of each of these eight emails from Trancos. The address on

Santa Monica Boulevard is a UPS Store, not the address of the business. Defendant

Nelson admitted that this is not a physical location for Defendant Trancos, but merely a

postal box. Plaintiff subpoenaed documents for this address from the UPS Store (Trial

Exhibit #9), and the application for the postal box is in the name of

11

USAProductsOnline.com – an entity which does not exist. The physical address given on the application is the Trancos office that was in Pacific Palisades, California.

Plaintiff never "clicked" to opt-out of any of these email communications Plaintiff never sent a letter asking to opt-out of future communications from these companies. Plaintiff did not attempt to "reply" to these emails with a request to stop sending future communications.

Opting out by the recipient is not required under the law. Indeed, the Attorney General and Internet Service Providers, such as Plaintiff's ISP Yahoo, tell the public *not* to respond or click on the opt-out button, because it is more likely to *cause* more spam to be sent – because it confirms the viability of the email address.

Plaintiff did sent a certified letter addressed to USAProductsOnline.com at the UPS address, which was received on August 9, 2007, complaining about receiving five spam emails, and demanding a remedy under the law of a $1000 penalty. Plaintiff never received a reply.

Plaintiff was not tricked into believing that these emails were anything other than commercial advertisements. Plaintiff was not tricked into seeking to purchase any goods or services. Plaintiff has a policy of never purchasing anything from a spam advertiser. The problem for Plaintiff is that the use of hundreds of nonsensical names for the sender tricks the spam filters from catching and identifying spam (and sending it into the spam file of a person's email).

During the relevant time period, Trancos had a procedure for deleting or otherwise segregating recipients who electronically request to "opt-out" of future communications from the same entity who provided the service lists. Trancos also commonly utilized a

12

form of contract (with those entering into an agreement to provide e-mail lists for sending

of advertisements and the sharing of revenue) explicitly requiring its "partner" to represent

that the e-mails were authorized or otherwise acquired through direct consent. Notably,

the agreement with Hi-Speed Media did *not* use this standard contract, but rather had no

promises or representations by Hi-Speed that they had direct consent or other

authorization for the use of the e-mails provided.

Plaintiff has not received any further spam from Defendant since August 2007.

Defendant Nelson testified to efforts to erase or exclude Plaintiff's e-mail address from all

subsequent use of e-mail lists, now and in the future.


### *Applicable Law*

The parties' requests for judicial notice are GRANTED as to federal and non-

California reported decisions and statutes and California legislative history, and is

DENIED as to unreported California trial court decisions.

Pertinent provisions of the California Business & Professions Code prohibiting

spam are as follows:

Section 17529.1

(a)     "Advertiser" means a person or entity that advertises

through the use of commercial e-mail advertisements.

(b)     "California electronic mail address" or "California e-mail

address" means any of the following:

(1)    An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state;

(2)    An e-mail address ordinarily accessed from a computer located in this state.

(3)    An e-mail address furnished to a resident of this state.

(c)    "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift, offer, or other disposition of any property, goods, services, or extension of credit.

(d)    "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements from the advertiser, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative.

* * *

(i)    "Initiate" means to transmit or cause to be transmitted a commercial e-mail advertisement or assist in the transmission of a commercial e-mail advertisement by providing electronic mail addresses where the advertisement may be sent . . . .

* * *

(l)    "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means

14

that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser.

Commercial e-mail advertisements sent pursuant to the exemption provided for a preexisting or current business relationship shall provide the recipient of the commercial e-mail advertisement with the ability to "opt-out" from receiving further commercial e-mail advertisements by calling a toll-free telephone number or by sending an "unsubscribe" e-mail to the advertiser offering the products or services in the commercial e-mail advertisement. This opt-out provision does not apply to recipients who are receiving free-email service with regard to commercial e-mail advertisements sent by the provider of the e-mail service.

* * *

(o)    "Unsolicited commercial e-mail advertisement" means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria:

(1)    The recipient has not provides direct consent to receive advertisements from the advertiser.

(2)    The recipient does not have a preexisting or current business relationship, as defined in subdivision (l), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.

15

Section 17529.2

Notwithstanding any other provision of law, a person or entity may not do any of the following:

(a)     Initiate or advertise in an unsolicited commercial e-mail advertisement from California or advertise in an unsolicited commercial e-mail advertisement sent from California.

(b)     Initiate or advertise in an unsolicited commercial e-mail advertisement to a California electronic mail address, or advertise in an unsolicited commercial e-mail advertisement sent to a California electronic mail address.

* * *

Section 17529.5

(a)     It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

(1)     The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.

(2)     The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.

16

(3)    The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

(b)(1)(A)    In addition to any other remedies provided by any other provision of law, the following may bring an action against a person or entity that violates any provision of this section:

. . .    (iii)    A recipient of an unsolicited commercial e-mail advertisement, as defined in Section 17529.1.

(B)    A person or entity bringing an action pursuant to subparagraph (A) may recover either or both of the following:

(i)    Actual damages.

(ii)    Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of this section, up to one million dollars ($1,000,000) per incident.

(C)    The recipient, an electronic mail service provider, or the Attorney General, if the prevailing plaintiff, may also recover reasonable attorney's fees and costs.

* * *

(2)    If the court finds that the defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are

17

in violation of this section, the court shall reduce the liquidated damages recoverable under paragraph (1) to a maximum of one hundred dollars ($100) for each unsolicited commercial e-mail advertisement, or a maximum of one hundred thousand dollars ($100,000) per incident.

(3)(A) A person who has brought an action against a party under this section shall not bring an action against that party under Section 17529.8 or 17538.45 for the same commercial e-mail advertisement, as defined in subdivision (c) of section 17529.1.

* * *

Section 17529.8

(a)(1) In addition to any other remedies provided by this article or by any other provisions of law, a recipient of an unsolicited commercial e-mail advertisement transmitted in violation of this article, an electronic mail service provider, or the Attorney General may bring an action against an entity that violates any provision of this article to recover either or both of the following:

(A)    Actual damages.

(B)    Liquidated damages of one thousand dollars ($1,000) for each unsolicited commercial e-mail advertisement transmitted in violation of Section 17529.2, up to one million dollars ($1,000,000) per incident.

(2)    The recipient, an electronic mail service provider, or the
Attorney General, if the prevailing plaintiff, may also recover reasonable
attorney's fees and costs.

* * *

(b)    If the court finds that the defendant established and
implemented, with due care, practice and procedures reasonably designed
to effectively prevent unsolicited commercial e-mail advertisements that are
in violation of this article, the court shall reduce the liquidated damages
recoverable under subdivision (a) to a maximum of one hundred dollars
($100) for each unsolicited commercial e-mail advertisement, or a
maximum of one hundred thousand dollars ($100,00) per incident.

Section 17538.5

(a)    It is unlawful in the sale or offering for sale of consumer
goods or services for any person conducting, any business in this state
which utilizes a post office box address, a private mailbox receiving
service, or a street address representing a site used for the receipt or
delivery of mail or as a telephone answering service, to fail to disclose the
legal name under which business is done and, except as provided in
paragraph (2) of subdivision (b), the complete street address from which
business is actually conducted in all advertising and promotional materials,
including order blanks and forms. Any violation of the provisions of this
section is a misdemeanor punishable by imprisonment in the county jail not

19

exceeding six months, or by a fine not exceeding two thousand five

hundred dollars ($2,500), or both.

### *There Is No Federal Preemption*

The Court also held that Plaintiff's first cause of action for violation of Business &

Professions Code Section 17529 *et seq.* is not pre-empted under federal law, for the

reasons set forth on the record which are incorporated herein by reference without

repeating. As its "objection" to the tentative statement of decision, Defendant argues

further with additional authorities cited for the proposition that the California anti-spam

statute is preempted by federal law, known as CAN-SPAM, 15 U.S.C. §7701 *et seq*. This

further argument does not lead the Court to a difference conclusion, and the Court finds

that Plaintiff's claim is not preempted by federal law.

That the California statute is *not* preempted by federal law is supported by Asis

Internet Services v. Consumerbargaingiveaways LLC (N.D. Cal. 2009) 622 F.Supp.2d

935; Asis Internet Services v. Subscriberbase Inc. (N.D. Cal. 2009) 2009 U.S. Dist.

LEXIS 112852; Asis Internet Services v. Vistaprint USA Inc. (N.D. Cal. 2009) 617

F.Supp.2d 989; see also Ferguson v. Friendfinders Inc. (2002) 94 cAL.aPP.34TH 1255,

1267-1268 ("We find that California has a substantial legitimate interest in protecting its

citizens from the harmful effects of deceptive UCE [unsolicited commercial e-mail]").

Congressional legislative history reflects that "a State law prohibiting fraudulent or

deceptive headers, subject lines, or content in commercial e-mail would not be

preempted." S. Rep. No. 108-102.

Defendants assert that the Ninth Circuit decision in <u>Gordon v. Virtumundo Inc.</u> (9th cir. 2008) 575 F.3d 1040, supports its assertion of preemption. It does not demonstrate preemption as to Plaintiff's claims herein. First, the Ninth Circuit in <u>Gordon</u> was applying Washington State law, which is *not* the same as our California statute. For example, the Washington State statute, Wash. Rev. Code §19.190.010 *et seq.*, does not require that the "initiator" of the spam email *know* that it is false or misleading, and does not require that any false information or misrepresentation be *material*. Second, the Ninth Circuit in <u>Gordon</u> held that Gordon's claim was not for a deceptive or fraudulent practice, because he was able to easily trace and identify the actual owner of the domain names used and the sending of the emails. <u>Gordon</u>, at p. 1064. The Ninth Circuit explicitly distinguished the sort of claim – as alleged by Plaintiff Balsam – which *would* be exempt and *not* subject to federal preemption:

> Nothing contained in this claim [by Gordon] rises to the level of "falsity or deception" within the meaning of the CAN-SPAM Act's preemption clause. Gordon offers no proof that any headers have been altered to impair a recipient's ability to identify, locate, or respond to the person who initiated the e-mail. Nor does he present evidence that Virtumundo's practice is aimed at misleading recipients as to the identity of the sender.

<u>Gordon</u>, at p. 1064. Plaintiff Balsam *has* proven that Defendant Trancos intentionally undertook efforts to impair a recipient's ability to identify, locate, or respond to it as the initiator of the email, and that it intended to hide itself from identification by recipients as the sender.

21

### *Legal Analysis*

The evidence reflects that Defendant Brian Nelson was acting at all relevant times as an officer and employee of Defendant Trancos Inc. in regard to the subject transactions, and thus liability and responsibility reposes in the corporation and not in Defendant Nelson individually.

Plaintiff has demonstrated by a preponderance of the evidence that his email is a California email as defined in Section 17529.1(b), that the eight emails he received from Defendant Trancos are commercial email advertisements as defined in Section 17529.1(c), that Plaintiff did *not* give direct consent to receive commercial email advertisements from any of these eight advertisers nor from Trancos nor from Hi-Speed Media nor from Give Away Cafe.com as defined in Section 17529.1(d), that Defendant Trancos initiated the eight emails sent to Plaintiff as defined in Section 17529.1(i), and that Plaintiff had no preexisting or current business relationship with any of the eight advertisers whose products or services were the subject of the eight emails as defined in Section 17529.1(l).

Even if there had been a preexisting or current business relationship, Defendant Trancos did not comply with the opt-out requirements of Section 17529.1(l), nor did the eight advertisers. The statute requires that there be an opportunity to opt-out by calling a toll-free number or "by sending an unsubscribe e-mail to the advertiser offering the products or services in the commercial e-mail advertisement". *None* of the eight emails provided a toll-free number to call to opt-out. *Seven* of the eight emails did not provide the ability to send an "unsubscribe" email *to the advertiser* of the product or service advertised in the email. Only the email for eHarmony nominally provided a link to eHarmony. Defendants presented no evidence that clicking the opt-out on the email

would have sent an unsubscribe message *to the advertiser*. Trancos was not the advertiser because it was not selling any product or service advertised in the email – the same is true for Hi-Speed Media.

Plaintiff has asserted that Email #1 violates Section 17529.5(a)(3) for having a false subject line, in that the representation, "Get paid 5 dollars for 1 survey", is false. Yet, Section 17529.5(a)(3) requires "that a person knows" it "would be likely to mislead a recipient". Plaintiff did not prove by a preponderance of the evidence that Trancos or its officers (such as Nelson) actually *knew* this was a false statement or was misleading.

Plaintiff has asserted that all eight emails violate Section 17529.5(a)(2) because of "falsified, misrepresented, or forged header information". There is no evidence that header information was forged. Rather the issue is whether it is falsified or misrepresented. Other than the email for eHarmony, which does state that it is from eHarmony, the seven other emails do not truly reveal who sent the email. Thus the sender information ("from") is misrepresented. All of these emails came from Defendant Trancos, but none of the emails disclose this in the header (or the body or the opt-out). The emails were sent on behalf of eight different advertisers, i.e., purveyors of good and service, but only eHarmony was a real company. The rest of the "senders" identified in the headers of the other seven emails do not exist or are otherwise misrepresented, namely Paid Survey, Your Business, Christian Dating, Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite  In those same headers reflecting the "from" line of the email, the referenced sender email is a non-existence entity using a nonsensical domain name reflecting no actual company, namely misstepoutcome.com,

modalworship.com, moussetogether.com, mucousmarquise.com, minuteprovenance.com, mythicaldumbwaiter.com, and nationalukulele.com.[2]

Accordingly, Plaintiff would be entitled to "liquidated damages"[3] against Defendant Trancos Inc. pursuant to Section 17529.5(b)(1)(B) of $7000.00 (seven spam multiplied by $1000).

Alternatively, Plaintiff has proven by a preponderance of the evidence that each of these eight emails constituted an unsolicited commercial e-mail advertisement as defined in Section 17529.1(o). Plaintiff has demonstrated that Defendant Trancos violated Section 17529.2 by initiating spam to a California email (and also sent from California). Accordingly, based upon the identical evidence and allegations, Plaintiff would be entitled

---

[2]    This Court acknowledges that the California Supreme Court presently has pending a decision, upon certification by the Ninth Circuit, to answer the following question of law: "Does sending unsolicited commercial email advertisements from multiple domain names for the purpose of bypassing spam filters constitute falsified, misrepresented, or forged header infromation under Cal. Bus & prof. Code § 17529.5(a)(2)?" (S169195.) In our case, the issue is not just sending of spam through multiple domain names, but that the "sender" names (or domain names used) do not represent any real company, and cannot be readily traced back to the true owner/sender. Contrary to the assertion by Defendant, the same cannot be said of use of email from "aol.com" or "comcast.net" or "google.com" because those all reflect a real existing company that actually does business.

[3]    In its "objection" to the tentative decision, Plaintiff argues extensively that the award should be called liquidated damages and not a penalty. In this case, there is no material distinction, i.e., the liquidated damages are the same as a statutory penalty. "Liquidated damages" consisting of a fixed sum with no demonstrate that the fixed amount is a fair approximation of probable damages for a violation or breach is the same as a "penalty" under the law. See Ridgley v. Topa Thrift & Loan Assn. (1998) 17 Cal.4th 970, 977. Here, there is no evidence and no legislative history reflecting that the $1000 amount in the "liquidated damages" provision is calculated based upon anticipated damages that one would actually incur for a violation of the statute; rather it is simply a fixed penalty. Further, despite its extensive argument, Plaintiff points to no substantive or material difference as to the effect in this case if the Court calls it a penalty or calls it liquidated damages.

24

to a (non-duplicative) remedy of a monetary penalty of $8000.00 (8 spam emails multiplied by $1000).

As Plaintiff is required by law to only receive damages or penalties under one of these two anti-spam statutes, as its primary claim was under Section 17529.5, the Court will only award the lesser amount of $7000.00.

The statutes provide a mitigation clause if the defendant established and implemented, with due care, practices and procedures reasonably designed to effectively prevent spam. See §17529.5(b)(2) and §1759.8(b). Defendant has failed to demonstrate the elements of the mitigation clause by a preponderance of the evidence. Indeed, the evidence reflects that Trancos intentionally and affirmatively established practices and procedures to avoid all human contact, avoid the ability of members of the public to contact Trancos directly to stop the sending of emails, and avoid members of the public even *knowing* who actually sent the emails.

Although not the basis of a claim, Plaintiff presented evidence that Trancos violated Section 17538.5 by giving a phony name for a nonexistence company as the business name for its UPS Store private mailbox address listed on each of the eight emails sent to Plaintiff, in that the mailbox was registered under the name of USAProductsOnline.com. This further denigrates any assertion that Defendant was acting with due care and design to avoid sending spam.


IT IS HEREBY ADJUDGED AND ORDERED that Defendant Trancos Inc. is liable to Plaintiff Daniel L. Balsam on the first cause of action for violation of the Business & Professions Code, and Plaintiff is awarded statutory "liquidated damages" of $7000.00

25

against Defendant Trancos Inc. The third cause of action for declaratory relief is DENIED AND DISMISSED AS MOOT. Defendant Trancos Inc. is not liable to Plaintiff Daniel L. Balsam on the second cause of action for violation of the Consumers Legal Remedies Act, and Plaintiff shall take nothing thereon. Defendant Brian Nelson is not liable to Plaintiff Daniel L. Balsam on any cause of action, and Plaintiff shall take nothing from Defendant Brian Nelson. No punitive damages are awarded to Plaintiff as Plaintiff has not presented actual damages by a preponderance of the evidence, and there is no statutory right to punitive damages for violation of the Business & Professions Code sections at issue here. Plaintiff is deemed the prevailing party as to Defendant Trancos Inc. and entitled to recovery of reasonable attorneys' fees and costs, pursuant to timely filing and service of a Memorandum of Costs and a Motion for Award of Attorneys' Fees.

DATED:    March 10, 2010

_____

HON. MARIE S. WEINER
JUDGE OF THE SUPERIOR COURT

**AFFIDAVIT OF MAILING**

**ENDORSED FILED**
SAN MATEO COUNTY

**CASE NUMBER:     CIV 471797**

MAR 1 0 2010

Clerk of the Superior Court
By TERRI MARAGOULAS
**DEPUTY CLERK**

**DANIEL L. BALSAM vs TRANCOS, INC. et al**

**JUDGMENT AND FINAL STATEMENT AND DECISION**

I declare, under penalty of perjury, that on the following date I deposited in the United State Post Office Mail Box at San Mateo, California a true copy of the foregoing document, enclosed in an envelope, with the proper and necessary postage prepaid thereon, and addressed to the following:

TIMOTHY WALTON, ESQ.
801 Woodside Road, Suite 11
Redwood City, CA 94061-3751

ROBERT NELSON
NELSON & WEINKAUF
35 Mitchell Blvd., Suite 15
San Rafael, CA 94903

**Executed on: March 10, 2010**
**at San Mateo, California**

**JOHN FITTON**
**CLERK OF THE SUPERIOR COURT**

**By:** TERRI MARAGOULAS
**Terri Maragoulas, Deputy Clerk**

| 9th Circuit Case Number(s) | 13-17449 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  | July 7, 2014 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)  | /s/ Daniel L. Balsam |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)  |  | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)  |  |